FILED
2015 AUG 12 PM 2:41
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., ) <br> LEATRA HARPER ) <br> 16555 Heron Road ) <br> Senecaville, OH 43780 ) <br> ) <br> and ) <br> ) <br> STEVEN JANSTO ) <br> 16555 Heron Road ) <br> Senecaville, OH 43780 ) <br> ) <br> and ) <br> ) <br> LESLIE HARPER ) <br> 237 67 West River Road ) <br> Grand Rapids, OH 43522 ) <br> ) <br> Relators, ) <br> ) <br> v. ) <br> ) <br> MUSKINGUM WATERSHED ) <br> CONSERVANCY DISTRICT ) <br> 1319 3rd St. NW; P.O. Box 349 ) <br> New Philadelphia, OH 44663 ) <br> ) <br> Respondent. | CASE NO.: <br> 5:15 CV 1608 <br> JUDGE <br> JUDGE LIOI <br><br> **COMPLAINT** <br> Filed under seal pursuant to 31 U.S.C. §3730(b)(2) <br><br> Jury trial demanded herein <br><br> MAG. JUDGE LIMBERT |

For their complaint against respondent Muskingum Watershed Conservancy District ("Respondent"), relators Leatra Harper, Steven Jansto and Leslie Harper ("Relators") state:

### JURISDICTION AND VENUE

1. Relators, allege causes of action under 31 U.S.C. § 3729 et seq. of the False Claims Act arising from Respondent's failure to return property and money belonging to the United States.

2. Relators are the original source of these allegations.

3. Relators provided the government with a confidential disclosure statement and exhibits to substantiate the allegations.

4. Jurisdiction is conferred upon this Court by 31 U.S.C. § 3732 and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## THE RELATORS

5. Relators, Leatra Harper, Steven Jansto, and Leslie Harper are United States citizens and residents of Ohio. Leatra and Steven own property abutting Seneca Lake.

## THE RESPONDENT

6. Muskingum Watershed Conservancy District (MWCD) is a political subdivision of Ohio. It was organized in 1933 to reduce the effects of flooding and conserve water for beneficial public uses under Ohio Revised Code Chapter 6101 (commonly called the Conservancy Act). The MWCD has jurisdiction in an 18-county area of Ohio including Ashland, Belmont, Carroll, Coshocton, Guernsey, Holmes, Harrison, Knox, Licking, Morgan, Muskingum, Noble, Richland, Stark, Summit, Tuscarawas, Wayne and Washington counties.

## FACTUAL BASIS OF ALLEGATIONS

7. In 1934, MWCD entered into an agreement with the United States regarding the construction of dams and reservoirs in MWCD's jurisdiction (the "MWCD Project"). The majority of the funding for the construction was provided by the United States through the National Industrial Recovery Act of 1933. MWCD agreed to provide a certain portion of the funding and maintain and operate the MWCD Project, without expense to the United States.

8. Subsequently, pursuant to the Flood Control Act of 1939 (the "1939 Act"), the MWCD project was declared to be a flood control project for purposes of the Flood Control Acts of 1938 and 1936. The 1939 Act, along with other acts, provided reimbursement to MWCD for

expenditures by MWCD on the MWCD Project. In addition, the 1939 Act relieved MWCD of the obligation to maintain and operate the MWCD Project dams and reservoirs.

9. The 1939 Act also provided that Section 2 of the 1938 Flood Control Act (the "1938 Act") applied to the MWCD Project. The 1938 Act provides that "title to all lands, easements, and rights-of-way for such project shall be acquired by the United States or by States, political subdivisions thereof or other responsible local agencies and conveyed to the United States…" The Secretary of the Army was authorized and directed to acquire title to all lands, easements and rights-of-way necessary for the MWCD Project, including lands on which dams and reservoirs are located, and reimburse MWCD its actual expenditures in acquiring same.

10. The 1939 Act further provided that the Secretary of the Army pay MWCD, $1,500,000 forthwith, prior to the actual transfer of title to the lands, easements, rights-of-way, and other property.

11. On or about August 22, 1939, the Department of the Army began to maintain and operate the MWCD Project dams and reservoirs. In addition, the Department of the Army paid to MWCD, $1,500,000 less $100,000 for expenses related to the operation of the dams and reservoirs.

12. On September 19, 1939, Lieutenant Colonel J. D. Arthur, on behalf of the Corps of Engineers, Department of the Army met with the MWCD to plan the transfer of all the MWCD Project's lands, easements and rights-of-way.

13. On November 8, 1939, MWCD advised the Governor of Ohio of the plan to transfer the MWCD Project lands, pursuant to the 1939 Act and the 1938 Act and requested that he obtain the opinion of the Ohio Attorney General as to MWCD's authority to transfer same.

14. On February 6, 1940, the Ohio Attorney General published his opinion that MWCD was not authorized to transfer property interests necessary for it to exercise and

complete its charter purposes, which were not being performed by the Federal Government. Ohio Atty. Gen'l. Op. 1812, p. 132 (1940).

15. On March 27, 1940, MWCD advised the Secretary of the Army that it was not authorized to transfer property interests, if doing so would prevent it from performing its charter purposes, which were not being performed by the Federal Government, and requested the Secretary of the Army to accept flowage easements in the MWCD Project reservoir lands.

16. On or about May 27, 1940, the Secretary of the Army accepted the flowage easements in the MWCD Project reservoir lands, but did not address MWCD's obligation to transfer the remaining interests in the MWCD Project lands.

17. In 1941, the Secretary of the Army was authorized to dispose of property, acquired for flood control projects, but were no longer needed for the purpose for which acquired, and credit the proceeds to the appropriation for the work for which it was acquired. 33 U.S.C. §558.

18. The authority to exchange or dispose of flood control project property was also set forth in the Code of Federal Regulations at 33 C.F.R. 211.10, at all times pertinent to the complaint.

19. In 1944, the Secretary of the Army was authorized to sell surplus water available at any reservoir under the control of the Department of the Army provided that the money received from such sales be deposited in the Treasury of the United States. 33 U.S.C. § 708.

20. In 2010, the United States Congress amended the reverse false claims and wrongful possession provisions of the False Claims Act, 31 U.S.C. § 3729 et seq. The accompanying Senate Report 111-10-111th Congress (2009-2010) (the "Senate Report"), p. 16, described the reverse false claim provision as being "designed to cover Government money or property that is knowingly retained by a person even though they have no right to it."

21. 31 U.S.C. § 3729(a)(1)(G) provides that any person who knowingly and improperly avoids an obligation to pay or transfer money or property to the Government is liable under the False Claims Act. "Obligation" is defined by 31 U.S.C. § 3729(b)(3) as "an established duty, whether or not fixed, arising from an express or implied contractual … relationship …[or] from statute or regulation…"

22. The Senate Report in describing obligations covered by the reverse false claim provision under the amendment stated that:

> "By including contingent obligations such as '… implied contractual, quasi-contractual … or similar relationship', this new section reflects the Committee's view … that an 'obligation' arises across the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that 'results in a duty to pay the Government money, whether or not the amount owed is yet fixed'. *Id.*, at 16.

23. In the same vein, the Senate Report described the amendment including duties arising from statute or regulation in the definition of obligation as follows:

> "S. 386 also includes the term 'statutory' to [sic] the definition of 'obligation'. This term was included to ensure that duties created by a statutory authority that may not be an express or implied contract or other relation are included as these statutory relationships confer a duty upon the recipient of Government funds regardless of the existence of a contract." *Id.*, at 18.

24. The Senate Report described the amendment to the wrongful possession provision of the False Claims Act as follows:

> "This section allows the Government to recover losses that are incurred because of conversion of Government assets. *Id.* at 16.

25. On June 17, 2011, MWCD entered into a lease of subsurface mineral rights to 6,485.79 acres of land at Clendening Lake, more or less, to Gulfport Energy Corporation ("Gulfport") to extract oil, gas and other mineral reserves via horizontal hydraulic fracturing. In consideration for leasing the mineral rights to Gulfport, MWCD received a bonus payment of

5

$15,565,896 in 2011, and has received or is to receive 16.5% royalties from mineral production. Ex. A.

26. On May 7, 2012, MWCD entered into a lease of subsurface mineral rights to 3,703.14 acres of land at Leesville Lake, more or less, to Chesapeake Exploration, LLC ("Chesapeake") to extract oil, gas and other mineral reserves via horizontal hydraulic fracturing. In consideration for leasing the mineral rights to Chesapeake, MWCD received a bonus payment of $20,880,000 in 2012, and has received or is to receive 20% royalties from mineral production. Ex. B.

27. On February 15, 2013, MWCD entered into a lease of subsurface minerals rights to 6,553.3391 acres of land at Seneca Lake, more or less, to Antero Resources Appalachian Corporation ("Antero") to extract oil, gas and other mineral reserves via horizontal hydraulic fracturing. In consideration for leasing the mineral rights to Antero, MWCD received a bonus payment of $40,630,702.42 in 2013, and has received or is to receive 20% royalties from mineral production. Ex. C.

28. On April 22, 2014, MWCD entered into a lease of subsurface mineral rights to 6,363.33 acres of land at Piedmont Lake, more or less, to Antero Resources Corporation ("Antero Resources") to extract oil, gas and other mineral reserves via horizontal hydraulic fracturing. In consideration for leasing the mineral rights to Antero Resources, MWCD received a bonus payment of $95,449,590 in 2014, and has received or is to receive 20% royalties from mineral production. Ex. D. On September 8, 2014, MWCD entered into an amendment of Piedmont Lake lease for 135.43 additional acres and received an additional bonus of $2,031,450 in 2014, resulting in an overall total bonus payment of $97,481,400. Approximately 146 additional acres which were defected pending future review could be added to the lease in the future.

29. The property interests conveyed by MWCD in the oil and gas leases described above were not necessary for performance of MWCD's charter purposes. As a result, there is no limitation on MWCD's authority to fulfill its obligation to transfer such interests to the United States.

30. MWCD has not fulfilled its obligation to transfer the property interests in the MWCD Project lands, other than the flowage easements.

31. Subsequent to the above-described leases, MWCD also retained income derived from said property interests, and failed to deliver it to the United States.

32. From 2012 to present, MWCD has sold water belonging to the United States from the reservoirs in the MWCD Project. MWCD has retained proceeds from the sales of water, and failed to deliver them to the United States.

33. On or about April 10, 2013, and on or about March 25, 2015, MWCD reported income derived from said property interests and water sales in its 2011, 2012, 2013 and 2014 financial reports in the amount of $195,764,148, but failed to report its above-described obligations as liabilities as required by O.A.C. § 117-2-02.

34. From the dates described above, MWCD has unlawfully withheld property interests and money due the United States.

## VIOLATIONS OF THE FALSE CLAIMS ACT

### COUNT I - 31 U.S.C. § 3729 (a)(1)(D)

35. The above allegations are re-alleged as if set forth fully.

36. Respondent has possession, custody, or control of property or money to be used by the Government and knowingly caused to be delivered, less than all of that money or property.

37. Because of Respondent's actions, the United States has been deprived of the property interests described above and an amount over $195,764,148 dollars, and any additional amounts received by Respondent for upfront payments, bonuses, royalties or other payments in connection with the above-described leases of land and water sales.

38. For each failure to turn over money and property, MWCD is subject to civil fines under the False Claims Act and three times the damages to the United States.

### COUNT II - 31 U.S.C. § 3729 (a)(1)(G)

39. The above allegations are re-alleged as if set forth fully.

40. Respondent has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

41. Respondent has an unfulfilled duty to report and return property and money to the Federal Government.

42. The United States is due the property interests described above and an amount over $195,764,148 dollars, and any additional amounts received by Respondent for upfront payments, bonuses, royalties or other payments in connection with the above-described leases of land and water sales.

43. For each such concealment, avoidance, or decrease of obligation to turn over money and property, MWCD is subject to a civil fine under the False Claims Act and three times the damages to the United States.

**WHEREFORE,** Relators demand judgment:

a) That this Court enter a judgment against Respondent in an amount equal to three times the damages the United States Government has sustained because of Respondent's false claims plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. Section 3729.

b) That Relators be awarded the maximum amount allowed under §3730(d) of the False Claims Act;

c) That Relators be awarded costs and expenses including reasonable attorneys' fees; and

d) That the Court order such other relief as is appropriate.

Respectfully submitted,

*Warner Mendenhall*
WARNER MENDENHALL, #0070165
Law Offices of Warner Mendenhall, Inc.
190 N. Union St., Ste. 201
Akron, OH 44304
(330) 535-9160; fax (330) 762-9743
warnermendenhall@hotmail.com
*Attorney for Relators*

## JURY DEMAND

Relator demands a trial by Jury under R. 38 of the Federal Rules of Civil Procedure.

*Warner Mendenhall*
Warner Mendenhall, #0070165

225083