# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., LEATRA HARPER, et al., | CASE NO. 5:15-cv-1608 |
| RELATORS, | JUDGE SARA LIOI |
| vs. | |
| MUSKINGUM WATERSHED CONSERVANCY DISTRICT, | MEMORANDUM OPINION |
| RESPONDENT. | |

Before the Court is the motion of respondent Muskingum Watershed Conservancy District ("respondent" or "MWCD") to dismiss this *qui tam* action, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 17 ["MTD"].) Relators Leatra Harper, Steven Jansto, and Leslie Harper (collectively "relators") oppose the motion (Doc. No. 20 ["MTD Opp'n"]), and respondent has replied. (Doc. No. 21 ["MTD Reply"].) The Court permitted, and the parties have filed, supplemental briefing. (Doc. No. 24 ["Relators' Suppl."]; Doc. No. 25 ["Respondent's Suppl."].) Because the doctrine of res judicata bars relators' claims, as more fully explained below, respondent's motion is granted and this case is dismissed.

I. **BACKGROUND**

The background facts set forth herein are taken from relators' first amended complaint ("FAC"). Where appropriate, these facts are supplemented by reference to the documents attached to and referenced by relators' amended pleading, or otherwise by matters for which the Court may take judicial notice. Relators Leatra Harper and Steven Jansto "own property abutting

Seneca Lake" in Ohio. (Doc. No. 11 (FAC) ¶ 5[1].) MWCD "is a political subdivision of Ohio" that was "organized in 1933 to reduce the effects of flooding and conserve water for beneficial public uses under the Ohio Revised Code Chapter 6101 (commonly called the Conservancy Act)." (*Id.* ¶ 6.) "The MWCD has jurisdiction in an 18-county area of Ohio including Ashland, Belmont, Carroll, Coshocton, Guernsey, Holmes, Harrison, Knox, Licking, Morgan, Muskingum, Noble, Richland, Stark, Summit, Tuscarawas, Wayne and Washington counties." (*Id.*)

This is not the first time that the parties have been embroiled in litigation. Indeed, the primary impetus for respondent's motion is its belief that this action is virtually identical to a prior *qui tam* action filed by relators in this Court. Because an understanding of this prior litigation is critical to the analysis of respondent's dispositive motion, the Court begins with a discussion of relators' 2013 federal action.

*Harper I*

On September 27, 2013, relators filed a federal *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729.[2] (*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, Case No. 5:13-cv-2145 (N.D. Ohio) ("*Harper I*")). The first amended complaint referenced a 1949 deed that was issued by the federal government, deeding to MWCD certain land in Ohio, including land abutting Seneca Lake in Guernsey and Noble Counties. (*Harper I*, Doc. No. 8

---

[1] Unless otherwise noted, all record cites are to the present case.

[2] Relators filed a similar action in the Southern District of Ohio. *See Harper v. Muskingum Watershed Conservancy Dist.*, Case No. 2:14-cv-02539 (S.D. Ohio). That parallel action was dismissed, upon relators' motion, on May 4, 2015. (Doc. No. 14 at 348). Further, there is no dispute that, prior to filing in federal court, relators had unsuccessfully prosecuted tort actions against MWCD in state court.

(First Amended Complaint ["FAC"]) ¶¶ 7-8; *Harper I*, Doc. No. 8-1 ["Deed"].) The deed provided that MWCD would retain ownership of the property "so long as said described lands shall be held and utilized for recreation, conservation and reservoir development purposes[.]" (*Harper I*, FAC ¶ 9; *Harper I*, Deed at 132[3].) The Deed also contained a reverter clause providing that title to the property would revert back to the federal government if MWCD alienated the property by ceasing to use the lands for the stated purposes of recreation, conservation, and reservoir development. (*Harper I*, Deed at 132-33; FAC ¶ 9.)

The focal point of *Harper I* was four leases MWCD entered into between June 2011 and April 2014 conveying gas and mineral rights to various energy businesses for the purpose of conducting horizontal hydraulic fracturing ("fracking"). (*Harper I*, FAC ¶¶ 10-13.) The leases all involved property that was subject to the Deed. It was relators' position that MWCD alienated the deeded property by entering into the aforementioned gas and oil leases (and, in doing so, ceasing to use the property for its stated purpose), thereby triggering the reverter clause and entitling the federal government to immediate possession of the lands. (*Id*. ¶¶ 16-19.) Relators maintained that, by failing to return the property, and by retaining the proceeds from the fracking leases, MWCD had violated the FCA. Relators brought a possession claim under 31 U.S.C. § 3729(a)(1)(D), and a reverse false claim under 31 U.S.C. § 3729(a)(1)(G).

The government declined to intervene, and the Court ordered the complaint unsealed and

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

3

served upon MWCD. On November 25, 2015, the Court issued a memorandum opinion dismissing *Harper I* upon respondent's motion to dismiss. (*Harper I*, Doc. No. 24 ["MO"].) The Court found that relators' claims were precluded by the FCA's public disclosure bar, and further determined that the claims failed to meet the pleading requirements of Rule 8(a) and 9(b) of the Federal Rules of Civil Procedure. (*Id*. at 470-71.) As to the prior finding, the Court held that relators were not the original source of the information supporting the action because the complaint allegations were the subject of prior public disclosures in the media. (*Id*. at 461-65.) As to the latter, the Court held that relators failed to come forward with factual allegations that MWCD knowingly concealed or improperly avoided an obligation to return the deeded property to the federal government. In other words, relators failed to plead facts that would have elevated their simple breach of contract allegations to the level of actionable fraud under the FCA. (*Id*. at 468-70.)

On November 21, 2016, the Sixth Circuit affirmed this Court's dismissal. *See U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist*., 842 F.3d 430 (6th Cir. 2016). Focusing on Rule 8(a)'s pleading requirements, the court of appeals held that relators' claims failed to support the scienter required to state reverse false and conversion claims under the FCA. *Id*. at 436-39. The Sixth Circuit denied relators' request for en banc rehearing on January 24, 2017. Relators have sought certiorari review before the United States Supreme Court. (*Harper I*, Doc. No. 48 (Notice of Filing Petition for a Writ of Certiorari)).

*Harper II*

While *Harper I* was still pending, on August 12, 2015, relators filed the present action (hereinafter referred to as "*Harper II*." Like *Harper I*, the relevant pleading in *Harper II* alleges

that MWCD has violated the FCA and purports to set forth a possession claim under 31 U.S.C. § 3729(a)(1)(D) and reverse false claim under § 3729(a)(1)(G). Also like *Harper I*, the present FAC highlights the four fracking leases entered into by MWCD between June 2011 and April 2014. (*Harper II*, FAC ¶¶ 25-28.) Further, as was the case in *Harper I*, the relators allege that, following the execution of these leases, the MWCD wrongfully and knowingly concealed and failed to transfer the subject property to the federal government and impermissibly withheld the proceeds from the leases. (*Id.* ¶¶ 30, 32-33.)

According to relators, that is where the similarities between the two litigations end. While relators asserted in *Harper I* that the leases triggered the reverter clause in the deed, in *Harper II* relators premise liability on the Flood Control Act of 1939 ("the 1939 Act"). The FAC explains that in 1934 MWCD entered into an agreement with the United States government to construct dams and reservoirs in MWCD's jurisdiction ("the MWCD Project"). (*Harper II*, FAC ¶ 7.) The 1939 Act declared the MWCD Project "to be a flood control project for purposes of the Flood Control Acts of 1938 and 1936[.]" (*Id.* ¶ 8, citing record.) The 1939 Act permitted the federal government to acquire all property and right-of-way accesses necessary to fulfill the purposes of the legislation. (*Id.* ¶ 9.)

After passage of the 1939 Act, a representative of the Army Corps of Engineers met with MWCD to discuss the transfer of the property. (*Id.* ¶ 12, citing record.) MWCD ultimately declined to transfer the property, relying on an opinion from the Ohio Attorney General that MWCD was not authorized to transfer the property if doing so would prevent it from performing its charter purposes. (*Id.* ¶¶ 13-15.) When MWCD entered into the fracking leases in 2011-2014, however, "MWCD determined that the property interests to be transferred pursuant to the

5

[fracking leases] were no longer necessary for the performance of its charter purposes i.e. recreation and conservation. As a result, there was no limitation on MWCD's authority to fulfill its obligation to transfer such interests to the United States." (*Id*. ¶ 30.)

The FAC alleges that, aware of its obligation to transfer the property under the 1939 Act, MWCD knowingly failed to satisfy its transfer obligations and unlawfully retained income derived from the leases. (*Id*. ¶¶ 31-33.) The FAC further alleges that from 2012 MWCD has "sold water belonging to the United States" and has unlawfully retained the proceeds from these sales. (*Id*. ¶ 34.) Relators seek to recover an amount equal to three times the damages the United States has sustained, in addition to a civil penalty for each alleged violation of 31 U.S.C. § 3729, costs and reasonable attorney's fees. (*Id.* at 259-60.)

The United States declined to intervene and, on May 16, 2016, the Court ordered the complaint unsealed and served upon MWCD. (Doc. No. 4 (Election to Decline Intervention); Doc. No. 5 (Order of Unsealing).) After the pleadings were amended, MWCD moved to dismiss the FAC. Respondent's motion is fully briefed and ripe for resolution.

**II. STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is

6

the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

In deciding a motion to dismiss under Rule 12, the Court generally may not consider

matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

### III. DISCUSSION

Respondent seeks Rule 12(b)(6) dismissal asserting that relators' claims are barred under claim preclusion and that they are untimely. Further, it argues that, like the Court found in *Harper I*, this Court should find that relators' claims are precluded by the public disclosure bar of the FCA and fail to meet the pleading requirements of Rules 8(a) and 9(b). The Court finds that relators' case is barred by the doctrine of claim preclusion. Thus, the Court need not reach respondent's alternative arguments.

"The doctrine of res judicata is often used broadly to encompass both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Cedillo v. TransCor Am., LLC*, 131 F. Supp. 3d 734, 740 (M.D. Tenn. 2015) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996); *see Taylor v. Sturgell*, 553 U.S. 880, 892-93, 128 S. Ct. 2161, 171 L. Ed. 2d

155 (2008). Under issue preclusion, once an issue is actually determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on different causes of action when used against any party to the prior litigation. *Mont. v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) (citations omitted); *see Heike v. Cent. Mich. Univ. Bd. of Tr.*, 573 F. App'x 476, 480 (6th Cir. 2014) (citations omitted). In contrast, under claim preclusion, "a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated, as well as every theory of recovery that could have been presented." *Cedillo*, 131 F. Supp. 3d at 740 (citation omitted); *see Taylor*, 553 U.S. at 892-93; *Heike*, 573 F. App'x at 480 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998) (quotation marks omitted)). "The purpose of claim preclusion 'is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources.'" *Heike*, 573 F. App'x at 479 (quoting *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).

Federal common law governs the preclusive effect of a prior federal court judgment. *See Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650 (6th Cir. 2007); *see also* 18B Charles Alan Wright, et al., *Federal Practice and Procedure* § 446 (2d ed. 2011); Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). Under the Sixth Circuit's articulation of federal claim preclusion, a claim will be barred by prior litigation if the following four elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or

9

should have been litigated in the prior action; and (4) an identity of the causes of action. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (citations omitted). Relators only challenge the last two elements. Consequently, the Court will only briefly discuss the first two elements, focusing, instead, on whether the issues raised in *Harper II* should have been litigated in *Harper I* and whether there is an identity of causes of action.

**Final Decision on the Merits**

It is undisputed that the Court entered final judgment in *Harper I* in favor of respondent when it dismissed the action under Fed. R. Civ. P. 12(b)(6). "In the federal courts, a dismissal pursuant to Rule 12(b)(6) is considered a decision on the merits with full res judicta effect." *Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989) (citing, among authority, *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)); *see, e.g., Hughes v. U.S. Dep't of Housing & Urban Dev.*, 238 F.3d 421 (table decision), 2000 WL 1828275, at *2 (6th Cir. Dec. 8, 2000) ("The dismissal of [plaintiff's] 1996 complaint has res judicata effect, as [plaintiff's] 1996 lawsuit was dismissed when the district court granted the defendants' Fed. R. Civ. P. 12(b)(6) motions.") (citations omitted). The first element is satisfied.

**Same Parties or their Privies**

MWCD also satisfies the second element of claim preclusion because *Harper II* involves the exact same litigants as *Harper I*.

**Issues Actually Litigated or Should have been Litigated**

"The third element of res judicata 'not only prohibits parties from bringing claims they

already have brought, but also from bringing those claims they *should* have brought.'" *Cedillo*, 131 F. Supp. 3d at 742 (quoting *Heike*, 573 F. App'x at 482) (emphasis in original) (further citation omitted)). For this reason, litigants "cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies." *Heike*, 573 F. App'x at 482 (citing *Rawe*, 462 F.3d at 529); *see Scozzari v. City of Clare*, No. 08-10997-BC, 2012 WL 1900600, at *4 (E.D. Mich. May 24, 2012) ("The third element recognizes that having failed to recover on one legal theory, a litigant cannot attempt to relitigate the same claim under a different theory of recovery.") (citing *Poe v. John Deer Co.*, 695 F.2d 1103, 1105 (8th Cir. 1982); Restatement (Second) of Judgments § 25)).

"To determine whether a claim 'should have been litigated' in an earlier action, the Sixth Circuit has stated that '[w]here the two causes of action arise from the same transaction, or series of transactions, a plaintiff should have litigated both causes in the first action and may not litigate the second issue latter.'" *Scozzari*, 2012 WL 1900600, at *4 (quoting *Holder v. City of Cleveland*, 287 F. App'x 468, 471 (6th Cir. 2008) (further citation omitted)); *see Hammond v. Vill. of Crooksville*, No. 2:08-cv-1049, 2009 WL 2524636, at *3 (S.D. Ohio Aug. 18, 2009) ("An issue could have been litigated in a prior case, and should have been litigated for res judicata purposes, if the facts underlying that issue are the same as the operative, or essential, facts in the prior case.") (citation and italics omitted).

Here, both actions arise from the exact same series of transactions—the four fracking leases entered into by MWCD between 2011 and 2014. In each case, relators have maintained that, upon entering into these leases, MWCD was obligated to return the property to the federal government. The only legal difference between the two actions is the basis upon which relators

11

believe the signing of the leases triggered a duty to return the property. In *Harper I*, relators relied on the reverter clause in the 1949 deed to impose liability under the FCA. In contrast, in *Harper II*, relators look to the 1939 Act for the legal hook for their FCA claims. Still, in both cases, relators have alleged that the act of entering into the leases signaled the fact that MWCD was no longer utilizing the property for its intended purposes of recreation and conservation. (*Harper I*, FAC ¶¶ 9, 17-18; *Harper II*, FAC ¶¶ 15, 30.)

Relators contend that the two actions do not arise from the same series of transactions because the claims in *Harper I* "arise from a reversion clause in a 1949 deed . . ." and the claims in *Harper II* "arise from a 1939 statute requiring the MWCD to transfer its property to the United States[.]" (MTD Opp'n at 453-54.) Relators are confusing the factual transactions that underlie their cases with the legal theories upon which they believe they are entitled to relief. The series of transactions that give rise to each case are the fracking leases, the 1939 Act and the 1949 deed merely supply the legal theories for recovery.[4] *See, e.g., Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 277-78 (6th Cir. 2016) (federal RICO action was properly dismissed under claim preclusion because the transaction at the action's core—the allegedly fraudulent assignment of property—was the same transaction at issue in a prior state court foreclosure action); *Wilkins v. Jakeway*, 993 F. Supp. 635, 646 (S.D. Ohio 1998) (plaintiff's § 1983 and First and Fourteenth Amendment claims should have been brought in prior action challenging

---

[4] Even though this provides a separate basis upon which to grant respondent's motion, relators' response to respondent's timeliness argument also illustrates the fatal flaw in relators' position on claim preclusion. Respondent argues that *Harper II* is time-barred based on allegations in the FAC that MWCD was aware of its duty to transfer the property as early as 1939. (MTD at 398.) In response, relators insist that the present action was not filed beyond the FCA's 6 year statute of limitations because it was not until 2011 to 2014 (the time MWCD executed the fracking leases) that MWCD no longer had a legal limitation on its ability to transfer the property to the federal government. (MTD Opp'n at 457-58.) Relators simply cannot have it both ways. If the operative facts at the heart of *Harper II* giving rise to the claims asserted therein really were the actions centering on the 1939 Act, then the present action was filed approximately 70 years too late.

wrongful termination in violation of the "whistleblower" portion of the FCA because both actions were based on the same facts and asserted the same injury—plaintiff's alleged wrongful termination), *rev'd and remanded, in part, on other grounds*, 183 F.3d 528 (6th Cir. 1999). Relators have, in essence, attempted to repack their grievances regarding the fracking leases by pursuing different theories of liability. Consistent with the rule of claim preclusion, relators cannot challenge the legality of the leases on one theory in *Harper I* and assert a different theory in this case. Consequently, the Court finds that respondent has met the third requirement for claim preclusion.

**Identity of Claims**

Because the fourth element also looks to the factual predicate for the claims, the same reasons support a finding that this element has been met. "Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same." *Heike*, 573 F. App'x at 483 (citation omitted). "In the words of the Supreme Court '[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action *depends on factual overlap*.'" *Id*. (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316, 131 S. Ct. 1723, 179 L. Ed. 2d 723 (2011) (emphasis in original)). "Two suits are for or [are] in respect to the same claim … if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id*. (alteration in original) (quotation marks and citation omitted); *see Smith*, 658 F. App'x at 278 ("The fourth element of the res judicata analysis is whether the second action arose out of the same transaction or occurrence.").

Here, both actions arose out of the lease agreements MWCD entered into between 2011

and 2014, and therefore both share the same core of operative facts. In fact, the FAC lifts almost verbatim much of the pleading in *Harper I* for use in *Harper II*. It does not matter that the underlying bases for recovery in *Harper I* and *Harper II* are different. *See Heike*, 573 F. App'x at 483 ("It therefore is of no moment that the statutory elements of Titles VI and Title IX claims differ from those of an equal-protection or due-process claim raised under § 1983."). Additionally, the fact that relators also seek to recover proceeds from MWCD's water sales does not change the significant factual overlap between the two actions.[5] *See Tohono O'odham Nation*, 563 U.S. at 318. This final element is met.

**Exception to Res Judicata**

Relators maintain, however, that an exception to the claim preclusion doctrine exists where "there is a limitation on the court's subject matter jurisdiction as described in Restatement (Second) of Judgments § 26[.]" (MTD Opp'n at 456.) According to relators, they could not have amended the complaint in *Harper I* to bring their claims relative to the 1939 Act because it would have required the refiling of the action under seal and a failure to file under seal would have deprived the Court of subject matter jurisdiction over the new claims. (*Id*. at 457.) Relators' argument implicates the FCA's sealing requirement, 31 U.S.C. § 3730(b)(2), which requires all FCA complaints to be filed under seal for at least 60 days while the government contemplates whether it will elect to intervene in the action. It is relators' position that they would not have

---

[5] Relators insist that the "property" at issue in the two lawsuits is different because the property in *Harper I* was "transferred to the MWCD in 1949[,]" while the property in *Harper II* "involves MWCD property, which is separate and distinct from the property, which is the subject of" *Harper I*. (MTD Opp'n at 451.) Relators then cite generally to the FAC in *Harper II* for support. (*Id*.) Once again, relators have conflated the factual underpinnings of each action with the theories supporting recovery. Moreover, even if the property boundaries of the deeded property and the property covered by the 1939 Act do not align precisely—something that is entirely unclear from the virtually identical factual allegations in the two actions—it is undisputed that the property that is the subject of the fracking leases is the same. Accordingly, it is clear that there is substantial factual overlap between the two actions.

been permitted to file their amended complaint under seal, with the new claim under the 1939 Act, and if they filed it without sealing it would have been automatically dismissed.

While the FCA's sealing provision is mandatory, a failure to abide by the sealing requirement does not require automatic dismissal. In *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, --U.S.--, 137 S. Ct. 436, 442, 196 L. Ed. 2d 340 (2016), the Supreme Court held that the sealing provision is a procedural rather than a jurisdictional rule. Specifically, the Court held that, while the FCA's sealing provision is mandatory, a failure to follow the sealing rule did not necessarily require dismissal because the provision is not tied to a party's right to bring a *qui tam* action. *Id.* at 443. In so ruling, the Court specifically rejected circuit decisions—including *U.S. ex. rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287 (6th Cir. 2010), a decision relied upon by relators—finding that the failure to file under seal required mandatory dismissal of a relator's complaint.[6] *Id.* at 442 (collecting circuit court cases, including *Summers*).

Yet, even before the ruling in *Rigsby*, the majority of district courts had held that the FCA's mandatory filing requirement did not apply to amended complaints, especially where, as here, an amended complaint makes similar allegations of fraud and the government has already been afforded an opportunity to consider whether to intervene.[7] *See U.S. ex. rel. Kolchinsky v.*

---

[6] The Court recognizes that the decision in *Rigsby* was issued *after* relators filed *Harper II*, and after the Court dismissed *Harper I*. However, as discussed *infra.*, the decision in *Summers* would not have saved relators.

[7] Relators insist that they filed the claims in *Harper II* in a separate action because the government needed an opportunity to consider whether it would intervene and prosecute these new claims. (MTD Opp'n at 450.) Of course, the government had already been given an opportunity to consider the legal implications of MWCD's execution of the fracking leases. Moreover, even without sealing, the government could revisit that decision at any time and intervene upon a showing of good cause. *See Saldivar*, 972 F. Supp. 2d at 1326 (citing 31 U.S.C. § 3730(c)(2)(D)(3); *United States ex rel. Walle v. Martin Marietta Corp.*, No. 92-3677, 1994 WL 518307, at *2 (E.D. La. Sept. 21, 1994) (granting leave to amend and add a new claim after discovery because "the Government has statutory authority to intervene at a later date," and further stating "[t]he Court is not persuaded by [relator's] concern for the Government" because "NASA is not going to walk away from any viable allegations that might put money back into the Government's pocket")).

*Moody's Corp.*, 162 F. Supp. 3d 186, 198 (S.D.N.Y. 2016) (district courts have generally agreed that resealing is not required when an amended complaint makes similar allegations of fraud) (collecting cases); *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1325 (N.D. Ga. 2013) (filing of amended complaint adding new claims did not require refiling under seal and the government still had the right to reconsider its decision not to intervene); *see also U.S. ex rel. Ubl v. IIF Data Solutions*, No. 1:06-cv-641, 2009 WL 1254704, at *4 (E.D. Va. May 5, 2009) ("[W]here the court already has unsealed the case and granted the relator leave to amend the complaint, the policy arguments supporting dismissal for failure to comply with the filing and service requirements no longer hold.") (citation omitted).

Further, even if the resealing of an amended complaint had been a jurisdictional requirement, relators have failed to identify any impediments in *Harper I* to seeking leave to file an amended complaint under seal. Relators never sought, and therefore were never denied leave—to amend the complaint in *Harper I* to add their claims under the 1939 Act. This is true even though relators now claim that it was "[d]uring [*Harper I* that] relators learned of a basis for FCA claims involving property unrelated to the 1949 deed." (MTD Opp'n at 450.) Moreover, the fact that it might have been "tactically inconvenient" to amend because the Court could have stayed the case while the government reconsidered whether it wished to intervene does not excuse relators from their obligation to bring all claims that could have been raised at the same time or in the same litigation. *See, e.g., U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 417 (6th Cir. 2016) (fact that bringing FCA claims with state tort claims would have required sealing and a stay under § 3730(b)(2) did not relieve relator of duty to bring all claims with similar fact patterns in the same forum) (citing Restatement (Second) of Judgments § 24

cmt. d).

IV. **CONCLUSION**

Relators are precluded from pursuing their FCA claims in this action because they arise from the same factual transactions as the FCA claims raised in *Harper I*, which achieved a final decision on the merits and involved the same parties as this case. As such, they could have and should have been brought in that prior action and the doctrine of res judicata bars relators from raising them now. For these reasons, respondent's motion to dismiss is granted, and this case is dismissed.

**IT IS SO ORDERED**.

Dated: September 15, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**